Mario Martinez (SBN 200721)
Edgar I. Aguilasocho (SBN 285567)
LAW OFFICES OF MARCOS CAMACHO
1227 California Ave.
Bakersfield, CA 93304
Tel:     (661) 324-8100
Fax:     (661) 324-8103
email:  mariomtz@mclawmail.com

Weeun Wang (pro hac vice)
FARMWORKER JUSTICE
1126 16th Street, NW, Suite 270
Washington, DC  20036
email:  wwang@farmworkerjustice.org
Tel:     (202) 293-5420
Fax:     (202) 293-5427

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YESENIA RUIZ, FERNANDO DORANTES, on behalf of themselves and all others similarly situated ) ) ) ) | Case No. _____ |
| Plaintiffs, ) | **CLASS ACTION COMPLAINT** |
| vs. ) ) | **JURY TRIAL DEMAND** |
| DARIGOLD, INC./NORTHWEST DAIRY ASSOCIATION, a Washington corporation, and DOES 1 - 50 ) ) ) ) | |
| Defendants. ) ) ) | |

Plaintiffs YESENIA RUIZ and FERNANDO DORANTES bring this action on behalf of themselves and on behalf of all others similarly situated against DARIGOLD, INC. /NORTHWEST DAIRY ASSOCIATION ("Darigold" or "Defendant").  Plaintiffs' allegations are based on personal knowledge, except where they be stated as based on information and belief.

## INTRODUCTION

1.      This consumer class action arises from the unfair and deceptive business practices of Darigold, one of the largest dairy producers in the country, which processes over eight billion pounds of milk annually, with total sales of almost two billion dollars each year.

2.      Darigold markets and sells its milk and dairy products as  if they were produced in an environment that places utmost care on animal health, food safety, and labor protections for its employees.  In reality, however, some of Darigold's milk is produced under conditions where dairy cows are injured and sick, where despite suffering from bloody and swollen udders, cows are still milked, and where workers are denied the most basic labor protections, such as drinkable water, lunch rooms, meal and rest periods, and an environment free of discrimination.  Darigold misrepresents this reality in its 2010 Corporate Social Responsibility Report ("CSR ") and in other publicity, and fails to disclose the true conditions under which cows are mistreated, the milk produced is from sick cows, and dairy workers are exploited. Attached as Exhibit 1 is a true and correct copy of the CSR available at Darigold's website.

http://www.darigold.com/images/uploads/csr_dg_2010.pdf

3.      On various occasions, Darigold officials have admitted knowing that its member dairies violate the law in connection with its treatment of workers and cows.  These material admissions took place before and near the time of Darigold's publishing of its 2010 CSR.  Darigold thus

_____

knew of the problems and issues concerning employment law violations and animal abuse prior to or at the time of publishing its 2010 CSR and other publicity. Darigold nonetheless represents itself in its CSR and publicity as selling milk and milk products that have been produced in an environment that is safe for animals, healthy for consumers, and respectful of workers' rights. To this day, the 2010 CSR is still readily available on Darigold's website despite Darigold officials knowing that it is false, or at least that it omits material information and deceives the public.

4.      Darigold has a duty to disclose such material information to consumers based on its superior knowledge regarding the conditions under which its member dairies operate.  Lacking such material information and relying on Darigold's CSR, consumers were likely to be deceived, were deceived, and/or purchased Darigold products when they otherwise would not have.

5.      Accordingly, Plaintiffs bring this class action on behalf of themselves and all others similarly situated for violations of California consumer protection statutes, including California Civil Code § 1750 et seq., (the Consumer Legal Remedies Act, or "CLRA"); California Business and Professions Code § 17200 et seq. (the "Unfair Competition Law," or "UCL"); California's False Advertising Law ("FAL"), Business and Professions Code § 17500 et seq. Washington Consumer Protection Act, RCW § 19.86.010(1); Oregon's unfair trade practices law, ORS §§ 646.608(1); and  California, Washington, and Oregon common-law claims of fraud by concealment and unjust enrichment.

## JURISDICTION

6.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and (d) because the amount in controversy for the Class exceeds five million dollars ($5,000,000)

and because Plaintiffs and other putative Class members are citizens of a different state than Defendant.

7.      With respect to the Sixth Cause of Action (Washington Consumer Protection Act), Seventh Cause of Action (Oregon Unlawful Trade Practices Act), Eighth Cause of Action (Washington Common Law Fraudulent Concealment), Ninth Cause of Action (Washington Common Law Unjust Enrichment), Tenth Cause of Action (Oregon Common Law Fraud by Concealment), and Eleventh Cause of Action (Oregon Common Law Unjust Enrichment),  this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the state law claims arise out of the same nucleus of operative facts as the claims over which this Court has original jurisdiction.

8.      This Court has personal jurisdiction over Defendant because it conducts substantial business in the District.

9.      Venue is proper in this District because Defendant sold and sells dairy products within the Northern District of California, and transactions at issue in this Complaint occurred within the Northern District of California.

## PARTIES

10.     Plaintiff Yesenia Ruiz resides in Daly City in San Mateo County, California. Ms. Ruiz buys dairy products approximately three or four times per month, usually at Safeway stores. Ms. Ruiz began buying Darigold products approximately five years ago, purchasing Darigold products three to four times per month. Ms. Ruiz had read Darigold's CSR and specifically bought Darigold products because she relied on the claims made by Darigold through its CSR and other publicity stating that the company's member dairies treated their workers and cows well. On or about January 2014, and continuing, Ms. Ruiz found out that the claims set out in

Darigold's CSR and publicity were false, or at least that Darigold had concealed, withheld, or otherwise failed to disclose material information concerning worker conditions and animal abuses at Darigold dairies.  Despite touting its "social responsibility," Darigold never informed Ms. Ruiz or other consumers that there were problems, potential problems, or issues relating to working conditions or animal treatment being raised by workers at Darigold member dairies. Ms. Ruiz stopped purchasing Darigold products upon learning that questions have been raised about the treatment of workers and animals at Darigold member dairies, including, among other things, at least one instance in which workers have sued a member dairy for violations of Washington's wage-and-hour and labor laws.  Had Darigold not misrepresented, concealed, withheld, or otherwise failed to disclose information about the conditions under which Darigold products were produced, she would not have purchased Darigold products and would have chosen to purchase other products instead.

11.    Fernando Dorantes is a resident of Bend, Oregon. Prior to February 2014, Mr. Dorantes purchased Darigold dairy products approximately five times per month for a period of more than three years. Mr. Dorantes usually purchased Darigold products at Cash & Carry stores. Mr. Dorantes had read Darigold's CSR, purchased Darigold products in reliance on the information contained therein, and, based on that information, believed Darigold's claims that it treats its workers and cows with respect and in compliance with the law. At the very least, the CSR reasonably led Mr. Dorantes to believe that there were no problems or issues with how workers and cows were treated at Darigold dairies. On or about February of 2014, Mr. Dorantes found out that the information that he had relied upon from Darigold's CSR and publicity was false, or at least that Darigold had concealed or otherwise withheld material information concerning worker conditions and animal abuses at Darigold dairies.  Among other things, Mr. Dorantes

learned of at least in one instance in which workers have sued a member dairy for violations of Washington's wage-and-hour and labor laws.  As a result, Mr. Dorantes has stopped buying Darigold products.  Had Darigold not misrepresented, concealed, withheld, or otherwise failed to disclose information about the conditions under which Darigold products were produced, Mr. Dorantes would not have purchased such products and would have chosen to purchase other products instead.

12.     Darigold has not informed the public that some of the management at its member dairies have used guns and have threatened workers with guns if they exercise their rights or demand that laws be respected.  Nor has Darigold informed the public that its member dairy owners frequently use racist comments such as "fucking Mexicans" or "fucking wetbacks" in speaking to dairy employees.  On other occasions, when workers at Darigold dairies complained about not being provided drinking water, Darigold dairy managers have told workers that they are to drink water from the water bins provided to cows, because Mexicans are animals too.  Darigold knows of these claims yet fails to disclose this material information to the public.

13.     As set forth herein, Plaintiffs and other members of the proposed Class purchased Darigold dairy products on a regular basis.  Had Darigold disclosed that its products are produced under conditions where dairy cows are injured and sick; where despite suffering from bloody or swollen udders, cows are still milked; and where workers are denied the most basic labor protections, Plaintiffs and other Class members would not have purchased such products. Moreover, had Darigold disclosed that questions have been raised by workers relating to the animal and labor conditions in which its products are produced, Plaintiffs and other Class members would not have purchased such products. Instead, Darigold misled Plaintiffs and other consumers through its CSR and other publicity, by failing to disclose that workers at its member

dairies were raising issues concerning work conditions, treatment of dairy cows, and had sued a member dairy for violations of Washington's laws.

14.     Darigold, Inc. is a dairy agricultural marketing corporation headquartered in Seattle, Washington. Darigold is owned by the over 500 dairy farm members of the Northwest Dairy Association ("NDA") located in various states, including Washington, Oregon, Idaho, Northern California, and Montana.  The NDA produces milk exclusively for Darigold products and uses the Darigold brand to market and sell its milk and milk products.  Raw milk produced by NDA dairy farm members is combined and co-mingled at Darigold processing facilities to produce milk and other dairy products for sale to retailers, who in turn sell those products to consumers.

15.     Darigold and NDA are directed and controlled by one another and have at all times acted to benefit each other and its respective members.  They are hereby referred to as "Defendant" or "Darigold."  Defendant produces over eight billion pounds of milk annually and has sales of approximately two billion dollars annually.  Defendant labels itself "one of the largest U.S. dairy processors" and produces dairy products from milk and butter, to sour cream, yogurt, and cottage cheese.  Defendant is incorporated in the State of Washington but does substantial business in California, Oregon and in other parts of the country.

## FACTUAL ALLEGATIONS

16.     Defendant's member farmers collectively employ thousands of agricultural employees on their dairy farms and own thousands of dairy cows.  As alleged in detail below, many of the Defendant's member farmers produce milk under conditions where dairy cows are injured and sick; where despite suffering from bloody udders, cows are still milked; and where workers are denied the most basic labor protections.  Workers at Defendant's member dairies have made

Darigold representatives aware of claims of worker and animal abuses occurring at Darigold member dairies.

17.     As alleged below, Darigold officials have on various occasions admitted knowing that its member dairies violate the law in connection with its treatment of workers and milk cows. Darigold thus knew or should have known of the problems and issues concerning employment law violations and animal abuse. Darigold nonetheless continues to represent itself as selling milk and milk products that have been produced in an environment that is safe for animals, healthy for consumers, and respectful of workers' rights.

18.     Darigold publishes web-based materials worldwide about its "corporate social responsibility," including in its 2010 CSR Report.  In the CSR, Darigold claims that it has committed to "adopting proactive measures that protect and enhance animal well-being" and that highlight the "world-class husbandry of our NDA producers."  CSR at 14–15.  The CSR further states that "Our farmers' dedication to providing high quality milk begins with world-class animal care;" that they provide "healthy living conditions" for their cows; and that they follow a "rigorous quality assurance program to ensure food safety and the highest quality products for our customers."  CSR at 14 - 15.  The CSR further claims that with respect to animal safety, "the performance levels of NDA farmers are excellent" and that its farmers are "currently among the most responsible in the nation with regard to animal well-being."  CSR at 28.  Darigold also claims that "Food safety is of paramount importance to Darigold." CSR at 38.

19.     With respect to labor protections, Darigold claims that its "employment policies and practices demonstrate [its] commitment to fair treatment of all employees wherever [it] operates" and that "at a minimum, [Darigold] compl[ies] with local, state and federal laws." CSR at 54. Despite admitting knowing that its member dairies violate the law, Darigold chose to mislead the

public and Class members by saying in its CSR that  its policies go *beyond* compliance with the law because it "cultivates" a "higher standard."  CSR at 54.  Darigold further claims that it provides an environment of "equal opportunity and non-discrimination."  CSR at 54.  The CSR also admits that "clean water is essential for drinking,"  CSR at 30, strongly implying that Darigold and its members provide dairy workers with clean drinking water.

20.     Darigold's CSR is issued as  "Darigold/Northwest Dairy Association's first Corporate Social Responsibility Report," thereby causing any reasonable reader of the report to conclude that its report applies to the Northwest Dairy Association member farms.

21.     In 2009, workers employed by Ruby Ridge Dairy, LLC, a member of Darigold/Northwest Dairy association, filed a complaint in Franklin County Superior Court in Washington State, alleging violations of basic labor laws such as failure to receive payment for all hours worked, failure to receive meal and rest periods, failure of the dairy to provide clean drinking water, and other violations of Washington labor laws.

22.     In various 2009 and 2010 meetings  between Darigold officials and representatives for workers employed at Darigold dairy farms, Darigold officials were informed in detail about the violations at Ruby Ridge and other problems, including workers' failure to receive payment for all hours worked, failure to receive meal and rest periods, the dairy's failure to provide clean drinking water, failure to provide employees the ability to eat in lunch rooms, racism, threats with guns, and animal health issues.  On several occasions, Darigold officials, including the Darigold vice-president, admitted to knowing that the violations concerning worker's employment rights and problems with cows at Ruby Ridge existed "on average" at all of Darigold's 500-plus member dairies.  Defendant's officials explicitly recognized that Ruby Ridge was "the average dairy" among its members, that there were some dairies with slightly

less violation of workers' rights and slightly fewer problems with cows, and some dairies with more violations of workers' rights and more problems with cows; and that among the more than 500 dairy members, one could expect to find the same animal and worker rights violations "across the board" as were found at Ruby Ridge.  Darigold officials made such admissions to workers' representatives on several occasions.

23.     Subsequent investigations from 2010 to the present at a substantial number of Darigold member farms have confirmed the following systematic violations: (1) failure to provide clean drinking water to employees; (2) failure to provide rest breaks; (3) failure to provide meal periods; (4) failure to pay for all hours worked; (5) animal cruelty; and (6)  racism against employees.

24.     Attached herein as Exhibit 2 to this complaint are samples of pictures obtained at Darigold member dairies showing injured cows and cows with swollen and bloody udders. Despite such serious injuries, Darigold member dairies still connect the cows to milking machines and milk them.

25.     In its CSR at various pages, Darigold mentions specific examples of allegations against it for violations of various laws.  See CSR at 16–17 (disclosing "human rights" incidents and incidents of discrimination resolved in its favor), at 54–55 (disclosing complaints of employment discrimination and their resolution in Darigold's favor).  However, in the CSR, Darigold does not disclose the lawsuit against its member dairy Ruby Ridge, nor does it represent to the public the other systematic violations identified herein which it admits; nor does it publish that its member dairies are engaged in labor law and workers' rights violations on a widespread basis.

26.     Nowhere in its CSR or website does Darigold disclose that the methods some of its members use to produce milk involve the use of sick and injured cows, that cows with bloody

---

and swollen udders are still milked, or that some of its member dairy farmers do not comply with local, state and federal laws, and that workers operate without the benefit of basic labor protections and humane treatment.

27.     Darigold knew or should have known that its members milk sick and injured cows, that cows with bloody and swollen udders are not taken out of milk production, or that some of its member dairy farmers do not comply with local, state and federal laws, as workers operate without the benefit of basic labor protections.

28.     Darigold has not informed the public that some of the management at its member dairies have used guns and have threatened workers with guns if they exercise their rights or demand that laws be respected.  Nor has Darigold informed the public that its member dairy owners frequently use racist comments such as "fucking Mexicans" or "fucking wetbacks" in speaking to dairy employees.

29.     Having decided to publish a CSR espousing its alleged virtues, Darigold had a duty to disclose such material information to consumers based on its superior knowledge regarding the dairies at which its milk is produced.

30.     Instead, Darigold misrepresented to the public, concealed, withheld, or otherwise failed to disclose material information that would have belied or undermined its public claims of social responsibility.

31.     Lacking such material information, relying on Darigold's misrepresentation, and as a result of Darigold's failure to disclose material information, Plaintiffs and other consumers were injured or suffered damage by having purchased Darigold products when they otherwise would not have.  Plaintiffs were deceived by these misrepresentations and omissions, and other consumers were likely to be deceived.

## CLASS ACTION ALLEGATIONS

32.     Plaintiffs incorporate each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

33.     Plaintiffs seek certification of a Class defined as: All persons  who purchased Darigold products in California, Oregon or Washington at any time after Darigold published its CSR in 2010.

34.     Excluded from the Class defined above are Defendant, its employees, co-conspirators, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers, their immediate family members, and associated court staff assigned to this case.  The proposed Class is ascertainable and shares a well-defined community of interest in common questions of law and fact.  Furthermore, this action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Federal Rules of Civil Procedure 23 governing class actions.

35.     Plaintiffs do not know the exact number of Class members at the present time.  However, due to the nature and volume of Darigold's multi-state trade and commerce, there are likely tens or hundreds of thousands of Class members, such that joinder of all Class members is impracticable.

36.     Questions of law and fact are common to the proposed Class and predominate over questions affecting only individual members, including, inter alia, the following:

        a.      Whether Darigold knew, should have known, or had information indicating that its members' operations involved sick or injured cows in milk production, or that Darigold workers had complained about such matters;

---

CLASS ACTION COMPLAINT

b.      Whether Darigold failed to disclose information indicating that its members'
operations involved sick or injured cows in milk production, or that Darigold workers had
complained about such matters;

c.      Whether Darigold knew, should have known, or had information indicating that
its members' operations involved milking cows whose udders were swollen, bleeding, or
unhealthy in any way, or that Darigold workers had complained about such matters;

d.      Whether Darigold failed to disclose information indicating that its members
operations involved milking cows whose udders were swollen, bleeding, or unhealthy in any
way, or that Darigold workers had complained about such matters;

e.      Whether, having decided to publish a Corporate Social Responsibility report,
Darigold is obligated to disclose in its CSR that its member dairy, Ruby Ridge, is being sued for
claims involving violation of Washington's labor and employment laws, and whether it had to
identify those claims to the public;

f.      Whether Darigold's publication of its CSR claiming responsibility for "animal
well-being" and its claims that its "employment policies and practices demonstrate [its]
commitment to fair treatment of all employees wherever [it] operates" and that its policies go
beyond minimum compliance with the law, were misleading and unlawful in light of the fact that
it knew, should have known, and has admitted that its member dairies on average committed the
same labor and employment law violations for which Ruby Ridge is being sued, and that its
members' dairies, on average, had animal health and injury issues, and workplace violations;

g.      Whether Darigold had a duty to disclose this information in its CSR based on its
superior knowledge, audits, and direction over its member dairies;

h.      Whether a reasonable consumer would find the nondisclosed or omitted information "material";

i.      Whether the nondisclosures or omitted information were likely to deceive or did deceive a reasonable consumer in violation of the CLRA, California UCL, Washington law (RCW § 19.86.010(1)), and/or Oregon law, ORS § 646.608 *et seq.*;

j.      Whether the nondisclosures or omitted information constitute an *unfair* business practice in violation of the UCL;

k.      Whether the nondisclosures or omitted information constitute an *unlawful* business practice in violation of the UCL;

l.      Whether the nondisclosures or omitted information constitute a deceptive business practice in violation of Washington law, RCW § 19.86.010(1);

m.      Whether the nondisclosures or omitted information constitute an *unlawful* trade practice in violation of ORS § 646.608 *et seq;*

n.      Whether Darigold's unlawful, unfair, and/or deceptive practices harmed Plaintiffs and the members of the Class as defined within each relevant cause of action;

o.      Whether Darigold committed fraud under the common law of California, Washington, and/or Oregon;

p.      Whether Darigold was unjustly enriched by its unlawful, unfair and/or deceptive practices; and

q.      Whether Plaintiffs and the members of the Class are entitled to damages, restitution, and/or equitable or injunctive relief.

37.     Plaintiffs' claims are typical of the claims of Class members as described above, and arise from the same course of conduct by Darigold and its member dairies. The relief Plaintiffs seek is typical of the relief sought for the absent Class members.

38.     Plaintiffs will fairly and adequately represent and protect the interests of all absent Class members. Plaintiffs are represented by counsel competent and experienced in class action litigation.

39.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class members is impracticable. Furthermore, because the restitution and damages suffered, and continue to be suffered, by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, and the burden imposed on the judicial system would be enormous.

40.     The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT
### (CAL. CIV. CODE § 1750, ET SEQ.)

41.     Plaintiffs incorporate each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

42.     Defendant is a "person" under California Civil Code section1761(c).

43.     Plaintiffs are "consumers," as defined by California Civil Code section 1761(d), who purchased Darigold products sold by Defendant.

44.     By failing to disclose and/or misrepresenting material information about the production methods concerning its milk, and the working conditions of dairy workers, Darigold engaged in deceptive business practices prohibited by the CLRA, California Civil Code section 1750, *et seq*., including (1) representing that products have characteristics, uses, benefits, and qualities which they do not have; (2) representing that products are of a particular standard, quality, and grade when they are not; and (3) advertising products with the intent not to sell them as advertised.

45.     Darigold had a duty to make these disclosures based on its superior knowledge regarding the production methods and working conditions at the dairies that produce its milk for all its products.

46.     A reasonable consumer would not have purchased or paid as much for the dairy products had Darigold disclosed the truth about how those products were or may have been produced, as that information is material to a reasonable consumer.

47.     As a result of its violations of various laws detailed above, Defendant has caused and continues to harm Plaintiffs and Class members and, if not stopped, will continue to harm them. Had Plaintiffs and Class members known the truth about the sick and injured cows, and working conditions of dairy workers, or that questions had been raised regarding such issues, they would not have purchased Defendant's products and/or paid as much for the products.

48.     In accordance with California Civil Code section 1780(a), Plaintiff and members of the class seek injunctive and equitable relief for Defendant's violations of the CLRA.  In addition,

after mailing appropriate notice and demand in accordance with California Civil Code 1782(a) and (d), Plaintiff will subsequently amend this Complaint to also include a request for damages. Plaintiffs and members of the Class request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief, including attorneys' fees and costs, as provided in Civil Code section 1780 and the Prayer for Relief.

49.     Plaintiffs include an affidavit with this Complaint that shows venue in the District is proper, to the extent such an affidavit is required, in federal court, by California Civil Code section 1780(d).

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE § 17200, ET SEQ.)**

50.     Plaintiffs incorporate each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

51.     California Business and Professions Code section 17200 et seq. prohibits any "unlawful, unfair, or fraudulent business act or practice."  Defendant has engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL.

52.     Defendant has violated the "unlawful" prong of section 17200 by its violation of the CLRA described above.

53.     Defendant has violated the "fraudulent" prong of section 17200 because the omissions and/or misrepresentations regarding its milk production as set forth in this Complaint were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

54.     Defendant has violated the "unfair" prong of section 17200 because the acts and practices set forth in this Complaint offend established public policy and because the harm they cause to consumers greatly outweighs any benefits associated with these practices.  Darigold's conduct also impaired competition within the milk and dairy product market and has prevented Plaintiffs and other consumers from making fully-informed decisions about whether to purchase Darigold products or to pay the price at which they were being sold.

55.     The named Plaintiffs have suffered injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices.  As set forth above, Plaintiffs relied on the omissions and/or misrepresentations made by Darigold in purchasing Darigold products.  Had Plaintiffs known the truth about the treatment of animals and workers at Darigold/NWA dairy farms, they would not have purchased the dairy products or paid as much for them.

56.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated throughout its business operations.

57.     Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the Class any money Darigold acquired by unfair competition, as provided in Business and Professions Code section 17203, and for such other relief as set forth below.

//

//

### THIRD CAUSE OF ACTION
### FRAUD BY CONCEALMENT
### (CALIFORNIA COMMON LAW)

58.     Plaintiffs incorporate each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

59.     As set forth above, Darigold concealed and/or misrepresented materials facts concerning its members' dairy operations.  Darigold had a duty to make these disclosures based on its superior knowledge of its dairy members' operations and, having decided to publish about its operations, had a duty not to misrepresent the nature of its operations.

60.     Darigold actively concealed material facts, in whole or in part, with the intent to induce Plaintiffs and members of the Class to purchase its dairy products.

61.     Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or misrepresented facts.

62.     As a result of concealment and/or misrepresentation of facts, Plaintiffs and the Class sustained damages in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT/COMMON LAW CLAIM FOR RESTITUTION
### (CALIFORNIA COMMON LAW)

63.     Plaintiffs incorporate each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

64.     As a result of its wrongful acts and omissions, as set forth above, Darigold obtained moneys which rightfully belong to Plaintiffs and the Class.  Had Plaintiffs and Class members known the truth about Darigold member dairies, they would not have purchased the Darigold products or paid as much for them.

65.     Darigold and its members enjoyed the benefits of increased financial gains, to the detriment of Plaintiffs and the Class.  It would be unjust and inequitable to permit Darigold to retain these wrongfully-obtained profits.

66.     Plaintiffs therefore seek an order requiring Darigold to make restitution to them and other members of the Class.

### FIFTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW ("FAL")
### CAL. BUS. & PROF. CODE § 17500 ET SEQ.

67.     Plaintiffs incorporate each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

68.     Darigold's acts constitute false advertising in violation of the California False Advertising Law, Cal. Business and Professions Code § 17500 et seq.

69.     Darigold's representations and omissions are untrue or misleading, and Defendant knew or should have known that the statements were untrue or misleading.  Defendant made these statements or omission in order to unlawfully induce the public to purchase its "Darigold" brand products.

70.     As a result of Darigold's violations of the False Advertising Law, Plaintiffs and other Class Members were likely to be deceived and/or were deceived into purchasing Darigold products and thereby suffered loss of money or property.

71.     Plaintiffs individually and on behalf of the Class, seek all remedies available under the FAL, including injunctive relief and restitution.

//

//

---

**SIXTH CAUSE OF ACTION**
**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT,**
**RCW § 19.86 ET SEQ.**
**NON-PER SE DECEPTIVE BUSINESS PRACTICE**

72.     Plaintiffs incorporate each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

73.      Darigold is a "person" within the meaning of the Washington Consumer Protection Act, RCW § 19.86.010(1), and conducts "trade" and "commerce" within the meaning of that Act, RCW § 19.86.010(2).

74.      Plaintiffs and other Class members are "persons" within the meaning of the Washington Consumer Protection Act, RCW § 19.86.010(1).

75.     Darigold has engaged in deceptive acts or practices. Darigold failed to disclose and/or misrepresented the production methods concerning its milk and the working conditions of dairy workers, and thereby engaged in deceptive business practices prohibited by the Washington Consumer Protection Act, RCW § 19.86 *et seq.*, including by (1) representing that products have characteristics, uses, benefits, and qualities which they do not have; (2) representing that products are of a particular standard, quality, and grade when they are not; and (3) advertising products with the intent not to sell them as advertised.

76.     Despite these representations, Darigold officials knew that Darigold member dairies commonly: (1) fail to provide clean drinking water to employees; (2) fail to provide rest breaks to employees; (3) fail to provide meal periods to employees; (4) fail to pay for all hours worked; and (5) expose cows to animal cruelty. Darigold's conduct is deceptive under RCW 19.86.020.

77.      Darigold's deceptive acts or practices have repeatedly occurred in its trade or business and were and are capable of deceiving a substantial portion of the public. The acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.  By wrongfully

inducing consumers to purchase its products through its deceptive acts and/or omissions, when those consumers would not otherwise have purchased those products or paid as much for them, Darigold has injured consumers' property interests.

78.     Darigold's deceptive acts and practices affect the public interest. The State of Washington has declared that it is in the "overriding public interest" to "[p]rotect the public by educating the public in reference to the quality, care, and methods used in the production of Washington state's dairy products." RCW § 15.44.015(4)(c). Further, the deceptive acts and practices were committed in the general course of Darigold's business and have already injured thousands of individuals.

79.     Plaintiff and the Class are therefore entitled to legal relief against Darigold, including recovery of actual damages, treble damages, attorneys' fees, costs of suit, and such further relief as the Court may deem proper.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF OREGON'S UNLAWFUL TRADE PRACTICES ACT ("UTPA")**
**ORS § 646.608 ET SEQ.**

80.     Plaintiffs incorporate each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

81.     Darigold's acts further constitute unfair trade practices under Oregon law, ORS §§ 646.608(1)(d)(e), (g), (t), and (u).

82.     Darigold's deceptive acts and practices constitute unfair trade practices because these acts or practices offend public policy as it has been established by statutes, regulations, the common law or otherwise, including, but not limited to, the public policy established by ORS § 646.608.

83.     Darigold's deceptive acts and practices constitute unfair trade practices because these acts or practices (1) cause substantial injury to Plaintiffs and Class members; (2) are not outweighed by any countervailing benefits to consumers or competitors; and (3) are not reasonably avoidable by consumers.

84.     Darigold's deceptive acts and practices constitute unfair trade practices because these acts or practices are immoral, unethical, oppressive and/or unscrupulous.

85.     As a result of Darigold's violations of ORS § 646.608 et seq., Plaintiffs and other Class Members suffered ascertainable loss of money or property.

86.     Plaintiffs, individually and on behalf of the Class, seek all remedies available under ORS § 646.605, including equitable relief, actual damages, statutory damages pursuant to ORS § 646.638(1), and punitive damages.

87.     Plaintiffs, individually and on behalf of the Class, also seek reasonable attorneys' fees and costs under ORS § 646.638(3).

**EIGHTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
**(WASHINGTON COMMON LAW)**

88.     Plaintiffs incorporate each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

89.     As set forth above, Darigold concealed and/or misrepresented materials facts concerning its members' dairy operations.  Darigold had a duty to make these disclosures based on its superior knowledge of its dairy members' operations and, having decided to publish about its operations, had a duty not to misrepresent the nature of those operations.

90.     Darigold actively concealed material facts, in whole or in part, with the intent to induce Plaintiffs and members of the Class to purchase its dairy products.

91.     Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or misrepresented facts.

92.     As a result of concealment and/or misrepresentation of facts, Plaintiffs and the Class sustained damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
## UNJUST ENRICHMENT
## (WASHINGTON COMMON LAW)

93.     Plaintiffs incorporate each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

94.     As a result of its wrongful acts and omissions, as set forth above, Darigold obtained moneys which rightfully belong to Plaintiffs and the Class.  Had Plaintiffs and Class members known the truth about Darigold member dairies, they would not have purchased the Darigold products or paid as much for them.

95.     Darigold and its members enjoyed the benefits of increased financial gains, to the detriment of Plaintiffs and the Class.  It would be unjust and inequitable to permit Darigold to retain these wrongfully-obtained profits.

96.     Plaintiffs therefore seek an order requiring Darigold to make restitution to them and other members of the Class.

## TENTH CAUSE OF ACTION
## FRAUD BY CONCEALMENT
## (OREGON COMMON LAW)

97.     Plaintiffs incorporate each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

98.     Defendant's acts, conduct, representations, and/or omissions constitute fraud by concealment under Oregon law.

99.     Plaintiffs and the Class seek all remedies for fraud available under Oregon law.

**ELEVENTH CAUSE OF ACTION
UNJUST ENRICHMENT
(OREGON COMMON LAW)**

100.    Plaintiffs incorporate each and every allegation set forth in all of the foregoing

paragraphs as if fully set forth herein.

101.    Defendant's acts, conduct, representations, and omissions constitute unjust enrichment

under Oregon law.

102.    Plaintiffs and the Class seek all remedies for unjust enrichment available under Oregon

law.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated,

respectfully request that this Court enter a judgment against Darigold and in favor of Plaintiffs,

and grant the following relief:

A.      Determine that this action may be maintained as a Class action with respect to the Class

identified herein and certify it as such under Federal Rule of Civil Procedure 23, or alternatively

certify all issues and claims that are appropriate for class-wide resolution, and designate and

appoint Plaintiffs as Class representatives and their counsel as Class counsel;

B.      Declare, adjudge and decree Defendant's conduct as alleged herein to be unlawful,

unfair, and or deceptive;

C.      Require Darigold to notify all Class members of the truth regarding the production

methods, including in connection with the treatment of workers and animals, used at its

members' dairies from which Darigold products are made;

D.      Award Plaintiffs and Class members actual, compensatory damages, as proven at trial, except that, with respect to the CLRA cause of action, such damages are not requested until this Complaint is amended pursuant to Cal. Civil Code § 1782;

E.      Award Plaintiffs restitution of all monies paid to Defendant as a result of unlawful, deceptive, and unfair business practices, except that, with respect to the CLRA cause of action, such restitution is not requested until this Complaint is amended pursuant to Cal. Civil Code § 1782;

F.      Award Plaintiffs and the Class members exemplary damages in amounts to be proven at trial, except that, with respect to the CLRA cause of action, such damages are not requested until this Complaint is amended pursuant to Cal. Civil Code § 1782;

G.      Award Plaintiffs and Class members reasonable attorneys' fees, costs, and pre- and post-judgment interest; and

H.      Award Plaintiffs and the Class members such other further relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

//

//

## <u>JURY TRIAL DEMAND</u>

Plaintiffs, through counsel, request a trial by jury on their legal claims, as set forth herein.

DATED: May 1, 2014          **LAW OFFICES OF MARCOS CAMACHO**

                                    Edgar I. Aguilasocho
                                    Mario Martinez

                                    **FARMWORKER JUSTICE**

                                    Weeun Wang

                                    By:   /s/ Mario Martinez_____

                                      Mario Martinez
                                    Attorney for Plaintiffs