UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YESENIA RUIZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DARIGOLD, INC./ NORTHWEST DAIRY ASSOCIATION, <br><br> Defendant. | Case No. 14-cv-02054-WHO <br><br> **ORDER GRANTING MOTION TO TRANSFER; DENYING AS MOOT MOTION TO DISMISS** <br><br> Re: Dkt. Nos. 20, 21 |

## INTRODUCTION

Plaintiffs Yesenia Ruiz and Fernando Dorantes allege that they purchased dairy products produced by defendants Darigold, Inc. and the Northwest Dairy Association in reliance on a Corporate Social Responsibility Report issued by the defendants in 2010. They contend that, contrary to the Corporate Social Responsibility Report, the defendants' cows are in fact mistreated, the milk produced is from sick cows, and the defendants' dairy workers are exploited. They assert claims under California, Oregon, and Washington consumer protection laws and for common law fraud.

The defendants have filed motions to transfer this matter to the Western District of Washington and to dismiss the complaint for failure to state a claim. Because the great majority of witnesses, parties and evidence are in the Western District of Washington, and there is very little connection to this District, the motion to transfer is GRANTED.[1] The motion to dismiss is DENIED AS MOOT because this matter is transferred.

---

[1] Per Civil Local Rule 7-1(b), I find this matter suitable for disposition without oral argument and VACATE the hearing currently scheduled for August 20, 2014.

**BACKGROUND**

Defendant Darigold, Inc. is a dairy agricultural marketing corporation. Compl. ¶ 14. Darigold is a wholly owned subsidiary of defendant Northwest Dairy Association. Both Darigold and The Northwest Dairy Association are headquartered in Seattle. *Id*.; Campbell Decl. ¶ 5. The Northwest Dairy Association is owned by its member dairy farms, which are independently owned and operated. Compl. ¶ 14; Campbell Decl. ¶ 3. The Northwest Dairy Association currently has over 480 member farms: over 310 are in Washington, approximately 70 are in Idaho and Oregon, each, 27 are in Utah, one is in Montana, and three are in California.[2] Campbell Decl. ¶¶ 6, 9. The members of the Northwest Dairy Association deliver their raw milk to the Northwest Dairy Association. Most of the Northwest Dairy Association's milk is processed by its wholly-owned subsidiary, Darigold. Campbell Decl. ¶ 4. Darigold operates 12 processing facilities: six are in Washington, three in Idaho, two in Oregon, and one in Montana. Campbell Decl. ¶ 7. None is in California.

In 2010, Darigold published a Corporate Social Responsibility Report, available on its website. Compl. ¶ 2. According to plaintiffs, the Corporate Social Responsibility Report represented that the defendants sell "milk and milk products that have been produced in an environment that is safe for animals, healthy for consumers, and respectful of workers' rights." Compl. ¶ 3. The plaintiffs contend that they purchased the defendants' milk relying on the representations in the Corporate Social Responsibility Report that the defendants' "member dairies treated their workers and cows well." Compl. ¶¶ 10-11. The plaintiffs allege that, contrary to the representations in the Corporate Social Responsibility Report, some of the defendants' milk is "produced under conditions where dairy cows are injured and sick, where despite suffering from bloody and swollen udders, cows are still milked, and where workers are denied the most basic labor protections, such as drinkable water, lunch rooms, meal and rest periods, and an environment free of discrimination." Compl. ¶ 2.

The plaintiffs have sued the defendants for violating California, Oregon, and Washington

---

[2] The briefing does not state in which districts within the various states the farms are located.

consumer protection laws and for common law fraud. The plaintiffs seek to represent a class of "[a]ll persons who purchased Darigold products in California, Oregon or Washington at any time after Darigold published its [Corporate Social Responsibility Report] in 2010." Compl. ¶ 33.

The defendants have moved to transfer this matter to the Western District of Washington under 28 U.S.C. § 1404(a), on grounds that venue in the Western District of Washington will better serve the convenience of the parties, witnesses, and interests of justice.[3] Dkt. No. 20. The defendants have also moved to dismiss the complaint for failure to state a claim. Dkt. No. 21.

## LEGAL STANDARD

Even where venue is proper, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A motion for transfer lies within the broad discretion of the district court, and must be determined on an individualized basis. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). Courts in this district evaluate the following factors to determine which venue is more convenient: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. *See, e.g., Kysone v. Regis Corp.*, 14-cv-1410 WHO, 2014 WL 2959483, *2 (N.D. Cal. June 30, 2014) (citing *Williams v. Bowman,* 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001)). "The convenience of non-party witnesses is often the most important factor in a transfer analysis." *Cedillo v. Transcor Am., LLC*, 2013 WL 4565826, *5 (N.D. Cal. Aug. 27, 2013)

## DISCUSSION[4]

As discussed below, the convenience of the witnesses, ease of access to evidence, and local interest in the controversy all weigh heavily in favor of transfer. Convenience of the parties also weighs in favor of transfer, though less heavily. In contrast, only plaintiffs' choice of forum and

---

[3] The defendants do not contest personal jurisdiction in this District.

[4] Because I grant the defendants' motion to transfer, I do not address their motion to dismiss.

relative court congestion weigh in favor of denying transfer, and only slightly. The other factors are neutral. I therefore GRANT the motion to transfer.

**I.      PLAINTIFF'S CHOICE OF FORUM**

The plaintiffs' choice of forum is normally given considerable weight. *See, e.g., Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). But that weight is substantially reduced in this case because there is very limited connection between this District and the plaintiffs' allegations and because the plaintiffs seek to represent class members who reside in various states. *See, e.g., id.* ("Although great weight is generally accorded plaintiff's choice of forum, when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight."); *Riva v. Pepsico, Inc.*, 2014 WL 1729023, at *3 (S.D. Cal. Apr. 30, 2014).

The plaintiffs contend that this District has "significant connections to the parties and transactions at issue in this case" because "Yesenia Ruiz resides in the Northern District, purchased Darigold products in the Northern District, and accessed Defendants' Corporate Social Responsibility Report in the Northern District." Plaintiffs also assert note that "Defendants do not dispute that they sold their dairy products in this District, and that some of its member dairies operate in this state." Opp. at 5.

The plaintiffs overstate the connections to this District. Plaintiff Ruiz seeks to represent class members who purchased defendants' products in California, Oregon and Washington. Compl. ¶ 33. Most of these potential plaintiffs live in districts other than the Northern District of California.[5] This action is no more connected to Plaintiff Ruiz's residence in this District than it is to any of the potential plaintiffs' residences. *See, e.g., Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened").

---

[5] The plaintiffs do not dispute the defendants' contention that over 60% of the defendants' consumer sales are in Washington and Oregon and that defendants do no consumer advertising in California. *See* Campbell Decl. ¶ 8, 10.

4

In contrast, as discussed further below, the majority of witnesses and the evidence are located in Washington. This is not a case built solely through access to evidence available electronically. The plaintiffs' claims require proof of the conditions at the defendants' member dairy farms, 65% of which are in Washington. Fewer than 1% of the farms (three farms) are located in California and plaintiffs do not allege anything specific to those farms. Both Darigold and the Northwest Dairy Alliance are located in Seattle, Washington. Moreover, all of defendants' employees who were supposedly aware of the farms' poor conditions are based in Seattle.[6]

## II. CONVENIENCE OF THE PARTIES

The convenience of the parties weighs moderately in favor of transferring venue to the Western District of Washington. Plaintiff Ruiz resides in Daly City, California. Compl. ¶ 10. Plaintiff Dorantes resides in Bend, Oregon. Compl. ¶ 11. Both defendants (Darigold and The Northwest Dairy Alliance) are based in Seattle. Campbell Decl. ¶ 5. All of Darigold's and The Northwest Dairy Alliance's officers reside in Washington. Campbell Decl. ¶ 5. Darigold operates 12 processing facilities, none of which are in California. Six are in Washington, three are in Idaho, two are in Oregon, and one is in Montana. Campbell Decl. ¶ 7. Only four of Darigold's 1,490 employees reside in California.[7] Campbell Decl. ¶ 7. Accordingly, venue in the Northern District of California is more convenient for plaintiff Ruiz and venue in the Western District of Washington is more convenient for plaintiffs Darigold and The Northwest Dairy Alliance. Plaintiff Dorantes has not indicated where he prefers to litigate, but I note that Seattle is considerably closer to Bend, Oregon, where he resides, than San Francisco. In addition, the majority of defendants' consumer sales and advertising is in Washington and Oregon. Campbell Decl. ¶¶ 8, 10. As a consequence, there are likely significantly more potential plaintiffs in the Western District of Washington than there are in this District.

---

[6] The plaintiffs do not dispute any of the venue-related facts asserted by the defendants' declarants in support of their motion to transfer. *See* Campbell Declaration [Dkt. No. 20-2].

[7] Plaintiffs do not contend that any of these California residents will be witnesses in this matter.

Plaintiffs contend that venue is more convenient in this District because "most of the attorneys, and many potential witnesses are located here." Opp. at 6. The location of counsel is not an appropriate consideration. *See, e.g., Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1157 (N.D. Cal. 2009) ("the location of plaintiffs' counsel is not an appropriate factor for the Court to consider when deciding a motion to transfer"). The location of witnesses is an important factor, but the plaintiffs do not identify any witnesses that are located in this District. On the contrary, as discussed, it appears that nearly all potential witnesses are located outside of California, with the majority in the Western District of Washington.

Plaintiffs also argue that venue in the Western District of Washington would be inconvenient to Ruiz because Ruiz has "no relevant personal ties to the State of Washington [and has] far fewer resources to afford litigation out of state." Opp. at 6-7. This may be true, but Ruiz has not provided any affidavit discussing the purported inconvenience and hardship of litigating in the Western District of Washington. These assertions, to the extent they are relevant, are therefore entitled to little weight. *See* N.D. Cal. Civ. R. 7-5(b) ("[f]actual contentions made in support of or opposition to any motion must be supported by and affidavit or declaration").

## III. CONVENIENCE OF THE WITNESSES

The convenience of the witnesses strongly weighs in favor of transfer to the Western District of Washington. Aside from the parties, representatives and employees of the approximately 480 member farms of the Northwest Dairy Alliance will be key fact witnesses. Those farms' veterinarians, regulators and inspectors, vendors and suppliers will likely also be important witnesses. 310 are of the farms are in Washington, 70 are in Idaho and Oregon, each, 27 are in Montana, and there is one in Utah.[8] Campbell Decl. ¶ 6. Only three of the farms are in California.[9] Campbell Decl. ¶ 9.

In response, the plaintiffs do not identify *any* witnesses in California. Instead, they

---

[8] In addition, Darigold operates 12 processing facilities, none of which are in California. Six are in Washington, three are in Idaho, two are in Oregon, and one is Montana. Campbell Decl. ¶ 7.

[9] The parties do not state where in California they are located.

contend that "[a]ny witnesses residing in Washington could be deposed in that state. Any relevant documents presumably can be copied on to electronic media and mailed or emailed to California, rendering the physical location of the documents a less important consideration." Opp. at 7. I am not convinced. The ability to depose dozens of witnesses where they reside does not make it any more convenient for the witnesses to testify at trial, and likely places them outside of the Court's subpoena power. This factor weighs heavily in favor of transferring to the Western District of Washington, particularly in light of the plaintiffs' failure to identify a single witness residing in this District.

### IV. EASE OF ACCESS TO THE EVIDENCE

This factor weighs heavily in favor of transfer. None of the relevant evidence appears to be in California, and the plaintiffs have not identified any.[10] The plaintiffs attach pictures to their complaint showing injured cows and cows with swollen and bloody udders being milked at the defendants' member farms. *See* Compl. ¶ 24. But the plaintiffs do not dispute defendants' assertion that those farms are not in California. *See* Mot. at 11 ("Conversely, there does not appear to be *any* relevant evidence in California — even the UFW's supposed "inspections" and pictures did not occur in California."). In contrast, access to the dairies and their cows—310 (65%) of which are located in Washington and only three of which are located in California—will be easier from the Western District of Washington. Access to the defendants' records will also be more convenient from the Western District of Washington, where the defendants are headquartered.

The plaintiffs concede that "many of the Company's relevant witnesses and documents will be located in Washington, where many of the Company's operations and employees are located and where the misleading documents were drafted . . . ." Opp. at 7. Plaintiff nonetheless argue that the Western District of Washington "is not significantly more convenient than the

---

[10] The plaintiffs attach pictures to their complaint showing injured cows and cows with swollen and bloody udders being milked at the defendants' member farms. *See* Compl. ¶ 24. But the plaintiffs do not dispute defendants' assertion that those farms are not in California. *See* Mot. at 11 ("Conversely, there does not appear to be *any* relevant evidence in California — even the UFW's supposed "inspections" and pictures did not occur in California.") (emphasis in original).

Northern District of California" because "a key piece of evidence —Darigold's Corporate Social Responsibility Report—was published on its website, which is accessible anywhere and not tied to any state."

The Corporate Social Responsibility Report is certainly a key piece of evidence. But since it is "accessible anywhere and not tied to any state," as the plaintiffs state, neither it nor other electronically available evidence is relevant to the convenience analysis. None of the remaining evidence is located in California. The great majority of it appears to be based in the Western District of Washington. This factor weighs heavily in favor of transferring to the Western District of Washington, particularly in light of the plaintiffs' failure to identify any evidence in this District.

## V. FAMILIARITY OF EACH FORUM WITH THE APPLICABLE LAW

The defendants assert that this factor is neutral given that the plaintiffs allege claims under California, Oregon and Washington laws and the plaintiffs do not directly respond. This factor is neutral.

## VI. FEASIBILITY OF CONSOLIDATION WITH OTHER CLAIMS

This factor is neutral as there are no other claims with which this action could be consolidated.

## VII. LOCAL INTEREST IN THE CONTROVERSY

The defendants contend that Washington has the greatest local interest in the allegations, assuming they are true, because that "is where the vast majority of NDA's [Northwest Dairy Association] member farms are located, and where NDA and Darigold are headquartered." Defendants also contend that "Washington would also have a stronger interest in seeing any alleged false advertising addressed, because Washington is where most of Darigold's consumer products are advertised and sold." Mot. at 12. The plaintiffs respond that California has an interest in this matter because Ruiz is a resident of this District and "California has a strong public interest in deciding controversies involving its citizens, and its interest is especially strong in having its citizens compensated for torts committed against them." Opp. at 8-9.

California generally has an interest in ensuring that its citizens are compensated for torts

8

committed against them. Each state has a similar interest. As discussed above, most of the class members in this case are likely residents of Washington, not California. Moreover, California's interest in this matter is reduced because the defendants are based and incorporated in Washington, not California. *Guimei v. Gen. Elec. Co.*, 172 Cal. App. 4th 689, 703 (2009) ("Additionally, inasmuch as defendants are not California corporations, California has little interest in keeping the litigation in this state to deter future wrongful conduct."). This factor weighs in favor of transfer.

### VIII. THE RELATIVE COURT CONGESTION AND TIME OF TRIAL IN EACH FORUM

The parties agree that the time to trial is 7.5 months less in the Northern District of California than in the Western District of Washington. This factor weighs slightly in favor of venue here.

### CONCLUSION

Because of the strong connection of this case to the Western District of Washington, and the very limited connection to this District, Defendants' motion to transfer is GRANTED. Dkt. No. 20. This action is TRANSFERRED to the Western District of Washington. Defendants' motion to dismiss is DENIED AS MOOT. Dkt. No. 21.

**IT IS SO ORDERED**.

Dated: August 14, 2014



WILLIAM H. ORRICK
United States District Judge